(Nos. 37515—7.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER E. HATHAWAY *et al.,* Plaintiffs in Error.

*Opinion filed March 22, 1963.—Rehearing denied May 29, 1963.*

Francis X. Riley, of Chicago, (Richard V. Houpt, of counsel,) for plaintiff in error.

Nicholas T. Kitsos, of Chicago, for *amicus curiae*.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

Writs of error have been consolidated here for the purpose of reviewing judgments finding Walter E. Hathaway, Paul D. Coffman and Irving Carlson, guilty of indirect criminal contempt of the village court of the village of Maywood, Cook County, arising out of the publication of a certain letter in Proviso Star-Sentinel critical of the village court of Maywood.

Prior orders declaring respondents guilty of indirect contempt were appealed to this court in *People* v. *Hathaway,* 24 Ill.2d 284. On that appeal we reversed the trial court on the sole ground that the trial judge erroneously denied proper petitions for changes of venue. We, there-

fore, did not reach the question of the sufficiency of the rules to show cause. Upon remand the change of venue was granted and the cases assigned to a visiting judge who, by agreement of the parties, decided the cases on the prior record. Walter Hathaway, who wrote the letter, was fined $50; Coffman, the publisher, was fined $1; and Carlson, who delivered the letter to Coffman, was fined $100. Respondents come directly to this court on the ground that the publication of the letter was protected by virtue of the first and fourteenth amendments to the constitution of the United States. *People* v. *Goss,* 10 Ill.2d 533.

The alleged contemptuous publication involves in part an apparent controversy concerning a local school board and the village court. On April 3, 1961, Judge Louis Kizas, Judge of the town court of Cicero, while sitting in the village court of Maywood as a visiting judge, upon *ex parte* application of one Marie Gibson, granted leave to file 42 criminal informations against certain named defendants, all of whom were members of the local board of education. The charges alleged conversion of school tax funds and the issuance of criminal warrants was ordered. The cases were scheduled for hearing on May 23, 1961. On April 27, 1961, the letter appeared in the *Proviso Star-Sentinel.* As we stated in our prior opinion: "The general tenor of the letter was critical of the administration of the court, which had been established two years previously, and suggested abolition of the court. It emphasized the desirability of the court functioning on a highly professional and nonpolitical basis, and charged that the judge and court attaches had been active as slatemakers and participants in local politics. The fifth paragraph read: 'A classic example in the recent school election, where even the criminal process of the court was abused in a last minute maneuver to shake the public's confidence in its grade school officials. These officials are now expected to stand trial in this very court on questionable charges under most questionable circumstances.' It is

conceded that 'criminal process' referred to 42 criminal informations charging 7 members of the local school board with conversion of public funds pending in the court."

The issue presented by this appeal is whether or not the publication of the letter was designedly calculated to impede, embarrass and obstruct the due administration of justice in relation to specific pending criminal cases. If it was so calculated to obstruct justice, it is contemptuous. If not, it is a constitutionally protected exercise of free speech. *People* v. *Goss,* 10 Ill.2d 533, 538; *People* v. *Gilbert,* 281 Ill. 619, 628.

In determining this issue we must be guided by the decisions of the United States Supreme Court in determining the interplay between the contempt power and freedom of speech as guaranteed by the constitution of the United States. That court stated in *Craig* v. *Harney,* 331 U.S. 367, 373, 91 L. ed. 1546, 1550:

"'The history of the power to punish for contempt [citations] and the unequivocal command of the First Amendment serve as constant reminders that freedom of speech and of the press should not be impaired through the exercise of that power, unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice."

It has been held that the first amendment forbids the punishment by contempt for comment on pending cases in absence of a showing that the utterances created a "clear and present danger" to the administration of justice. (*Pennekamp* v. *Florida,* 328 U.S. 331, 90 L. ed. 1295; *Bridges* v. *California,* 314 U.S. 252, 260, 86 L. ed. 192.) To be contemptuous published criticisms of a judge relating to a pending case must constitute an imminent or serious threat to a judge of reasonable fortitude. *Craig* v. *Harney,* 331 U.S. 367, 375.

We must consider the present publication in the light of these principles. The major portion of the letter is a

general criticism of the administration of the village court, and under the doctrine of *Craig* v. *Harney,* is constitutionally protected even though strong, intemperate and unfair. The only serious question arises from the language of the fifth paragraph of the letter. Briefly it charges that the criminal process of the court was abused by the filing of criminal informations against local school board members. It then characterizes the informations as "questionable charges under most questionable circumstances." The first charge is immune from contempt proceedings as it is a criticism of what the court has already done. (*Pennekamp* v. *Florida,* 328 U.S. 331.) The latter characterization is unfortunate and suggestive, but is certainly far milder than the tirades in issue in *Craig* v. *Harney,* or *Bridges* v. *California.* It contains no imminent threat of intimidation to either witnesses or jurors already selected as was present in *People* v. *Goss,* 10 Ill.2d 533. The implicit criticism of judges of the village court does not appear to us to have a clear and present danger of affecting the action of judges of reasonable fortitude. (*Craig* v. *Harney,* 331 U.S. 367, 375.) The danger of its effect on any jurors who might have been eventually summoned would seem to be remote rather than immediate. We must, therefore, conclude that the publication of this letter did not directly tend to obstruct the administration of justice.

While we do not mean to commend respondents' lack of editorial restraint, the teachings of the Supreme Court of the United States in the area of the great first-amendment freedoms compel us to reverse the trial court.

The judgments of the village court of the village of Maywood are reversed.

*Judgments reversed.*